PHILLIPS, Circuit Judge,
dissenting.
The Labor-Management Statute — combined with President Carter’s Executive Order 12,171 in response to it — excludes AFOSI’s employees from coverage under the Labor-Management Statute.[1] This precludes even those AFOSI employees not directly working on national-security matters from having the right “to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them.” [2] But nothing in the Labor-Management Statute or Executive Order takes the separate step of inserting the excluded AFOSI back into the Labor-Management Statute to defeat the rights of covered employees of other agencies. Those covered, non-AFOSI employees should retain the full scope of their coverage under the Labor-Management Statute.
The Labor-Management Statute unambiguously says that when a covered employee is examined by “a representative of the agency in connection with an investigation,” that employee is entitled to have a union representative attend the examination if the employee reasonably believes the examination may result in discipline. 5 U.S.C. § 7114(a)(2)(B). By the same token, if the examining entity isn’t the employer agency’s representative, an employee has no corresponding right to have a union representative attend. Id. In view of this, one would expect that the FLRA and the ALJ would have focused on whether, in examining Ptacek, AFOSI had acted as Hill Air Force Base’s “representative” under § 7114(a)(2)(B). But the FLRA and the ALJ declined to answer that question.
Instead of answering that question, the FLRA took a shortcut. It decided that when President Carter excluded AFOSI from the Labor-Management Statute’s coverage (again, preventing AFOSI’s own employees from unionizing), he also intended to strip covered employees like Ptacek of their right to bring a union representative to AFOSI’s examinations— even if AFOSI was acting as Hill Air *1302 Force Base’s “representative” under 5 U.S.C. § 7114(a)(2)(B). This goes too far. The Executive Order excludes AFOSI employees only from organizing and collectively bargaining their own conditions of employment — -it doesn’t swing an AFOSI wrecking ball into covered employees’ existing rights given by the Labor-Management Statute. Had President Carter intended to do that, I’d expect that he would have said so, especially when Congress has highlighted the societal benefits of affording the Labor-Management Statute’s rights to the non-excluded workforce.[3]
Unfortunately, the majority follows the FLRA’s shortcut. In doing so, I believe that the majority misconstrues what the Labor-Management Statute and Executive Order mean when they speak of an agency’s being excluded from coverage under the Labor-Management Statute. See 5 U.S.C. § 7103(b)(1); Exec. Order No. 12,-171 § 1-1, 44 Fed. Reg. 66,565 (Nov. 19, 1979). The Executive Order’s meaning is as plain as its consequences — AFOSI employees can no longer avail themselves of rights under the Labor-Management Statute. For instance, using the dispute in this case as a backdrop, the Executive Order precludes an AFOSI employee from unionizing and from ever bringing along a union representative to an examination the employee reasonably believes may result in disciplinary action. But that’s a far stretch from saying that the Executive Order silently defeats covered employees’ rights.
What, then, justifies the majority’s view that the Executive Order impliedly repeals Ptacek’s § 7114(a)(2)(B) right? National security, the majority says. It contends that unless the Executive Order impliedly repeals Ptacek’s right under § 7114(a)(2)(B), covered-agency employees throughout government can insist that union representatives accompany them to all AFOSI examinations — even those raising national-security matters. At first glance, the majority’s concern seems sufficiently serious to justify its riding to the rescue. But on a more careful second look, reading all of the statutory language together, the majority’s national-security concern reveals itself as more imagined than real. In fact, the Labor-Management Statute already solves the majority’s concern — it limits the employees’ right to bring along a union representative to situations where the examining entity (here, AFOSI) is acting as the representative of the employer agency (here, Hill Air Force Base). That sets our course. In addressing the majority’s national-security concerns, we then know to ask whether the investigating entity has acted as the employer-agency’s representative when examining a covered employee about a national-security matter. And, more particularly to our case, we know to ask whether AFOSI acted as Hill Air Force Base’s representative in examining Ptacek about felony possession of child pornography, or about his accessing adult pornography on his work computer.
Although “representing whom?” is the most important question in the case, the FLRA and ALJ sidestepped it. We should remand for the FLRA to develop the record and decide that question. We should not simply “assume without deciding” that AFOSI indeed acted as Hill Air Force Base’s representative. Majority Op. at 1297-98. In making its national-security case, the majority apparently again assumes without deciding that a law-enforcement agency examining a covered employ *1303 ee about a national-security matter will necessarily be acting as the employer-agency’s representative. That’s hard to accept when a-law-enforcement agency like AFOSI has its own, independent authority and responsibility to investigate national-security matters (or, as here, to investigate felonies having nothing to do with national security). The majority’s “assuming but not deciding” approach short-circuits the needed analysis. By assuming that AFOSI acted as Hill Air Force Base’s representative in examining Ptacek, the majority ignores what happens if AFOSI instead was representing itself. In that event, Ptacek would have no right to bring a union representative to the AFOSI examination, and he would lose his appeal.
It’s wrong for the majority to “assume without deciding” that AFOSI examined Ptacek as Hill Air Force Base’s representative. Because the FLRA didn’t develop the record on this point, we have no basis to assume that. And on appeal the FLRA acknowledges that the record isn’t developed on the degree of collaboration between AFOSI and Hill Air Force Base. AFOSI may well have acted as Hill Air Force Base’s representative in investigating Ptacek’s accessing adult pornography on his work computer (that sounds like a personnel matter) but not have acted as Hill Air Force Base’s representative when investigating felony child-pornography possession (a matter within its own jurisdiction to investigate), R. at 333-34. We need the FLRA to develop the record on those points.
By assuming but not deciding the “representative” issue, the majority leaves an unnecessary trail of “perhaps many” AFO-SI non-national-security examinations at which covered employees will lose their § 7114(a)(2)(B) right to have a union representative attend.[4] Majority Op. at 1299-1300. For instance, here, the majority’s unnecessary approach deprives Ptacek of his statutorily guaranteed union representation even if AFOSI switched gears during the examination to investigate him for accessing adult pornography at work — a personnel matter rather than a felony offense. I disagree with the majority that President Carter ever intended to strip covered employees of their § 7114(a)(2)(B) right as the cost of doing business to protect national security.
Nor do I think Congress or the President really need us doing their national-security job. If Congress or the President ever feel that national security demands the majority’s result, either Congress or the President can exclude Hill Air Force Base (or any other agency) from the Labor-Management Statute’s coverage. That neither Congress nor the President has done so speaks volumes. Perhaps both Congress and the President are comfortable that law-enforcement agencies are not an employer-agency’s “representatives” when investigating felonies, including national-security violations. I think we shouldn’t strain statutory language to solve a “problem” that Congress and a President could easily solve if they believe it really exists. We should leave the national-security work to the other two branches of government, where it belongs.
I disagree with the majority that any rival interpretation of the statute or Executive Order would be unreasonable. In analyzing why, the majority notes that, even *1304 before President Carter’s Executive Order, the Labor-Management Statute already excluded “any employee engaged in intelligence, counterintelligence, investigative, or security work which directly affects national security.” 5 U.S.C. § 7112(b)(6). From this, the majority concludes that the Labor-Management Statute already exempts all AFOSI investigators, and, in addition, all clerical employees engaged in “security work” — those clerical employees whose “duties include the regular use of, or access to, classified information.” Majority Op. at 1299 (quoting U.S. Dep’t of Justice Washington, D.C., 62 F.L.R.A. 286, 292 (2007)). Having gotten that far, the majority concludes that President Carter would not have included AFO-SI in the Executive Order just to reach the remaining clerical employees. I see two problems with this approach.
First, as mentioned, AFOSI has broad authority to investigate a host of criminal offenses unrelated to national security. Based on the record before us, I can’t tell whether all of AFOSI’s investigators even work on matters directly affecting national security. By excluding all AFOSI employees from the Labor-Management Statute’s coverage, the Executive Order eliminates any potential challenge from any AFOSI investigator who doesn’t work on matters directly affecting national security (perhaps, for instance, an investigator who exclusively investigates governmental thefts).
Second, I find it entirely plausible that the executive branch might have legitimate national-security concerns arising from the work that all AFOSI clerical employees do. Presumably, all clerical employees might at least occasionally have access to information bearing on national security since AFOSI works directly on national-security cases. After all, clerical employees type documents, store information, and converse with each other. For this reason, President Carter could reasonably have desired a blanket denial of the Labor-Management Statute’s coverage to all AFOSI employees.
' Finally, the majority supports its reading by contrasting the President’s power to wholly exclude an agency located in the United States from the Labor-Management Statute’s coverage with the President’s power to suspend any provision of the Labor-Management Statute for agencies “located outside the 50 States and the District of Columbia, if the President determines that the suspension is necessary in the interest of national security.”[5] 5 U.S.C. § 7103(b)(2). I can’t see how this matters. Granted, the President did wholly exclude AFOSI from the Labor-Management Statute. But this just means that AFOSI employees could no longer unionize or avail themselves of any of the Labor-Management Statute’s benefits. It doesn’t follow that just because President Carter intended to exclude AFOSI employees from unionizing, he also intended to limit the rights of covered, non-AFOSI. employees.
I think the majority gives short shrift to U.S. Dep’t of the Air Force Ogden Air Logistics Ctr. Hill Air Force Base, Utah, 36 F.L.R.A. 748 (1990). I agree that this decision didn’t address “whether § 7103(b)(1) and Executive Order 12,171 exempted AFOSI from complying with § 7114(a)(2).” Majority Op. at 1300. But why didn’t it? I think we can fairly assume that by 1990 the FLRA knew full well about President Carter’s 1979 Executive Order. And that being so, I think the most likely reason that the FLRA didn’t address § 7114(a)(2) is that it reasoned that *1305 AFOSI’s exclusion didn’t operate to defeat covered, non-AFOSI employees’ rights under the Labor-Management Statute. In view of that, I don’t understand the majority’s position that this decision is “not entitled to any consideration on the issue before us.” Majority Op. at 1300.
Nor am I persuaded by the majority’s own cited cases. Illustrative is Lawson v. Dep’t of Air Force, 215 F.3d 1347, 1999 WL 594536 (Fed. Cir. 1999) (unpublished), which the majority says “explained [that] ‘an executive order clearly exempts Air Force OSI and other investigative agencies and subdivisions from [5 U.S.C. § 7114(a)(2)(B)].’” Majority Op. at 1300 (alteration omitted) (quoting Lawson, 1999 WL 594536, at *1). The decision explains nothing, but, on our issue, simply offers the single conclusory sentence the majority quotes.
In sum, I believe the plain language of the Labor-Management Statute and Executive Order simply precludes AFOSI employees from availing themselves of the benefits of Labor-Management Statute coverage. If Congress or the President ever believe that § 7114(a)(2)(B) imperils national security by affording a union representative at AFOSI examinations, Congress or the President can easily eliminate the threat — just exclude the employing agency from the Labor-Management Statute.

. Although the Labor-Management Statute speaks of excluding agencies, its effect is really to exclude agency employees from coverage. That’s why Congress declares that "[i]t is the purpose of this chapter [Labor-Management Relations] to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government.” 5 U.S.C. § 7101(b).

. These employee rights are first referenced at 5 U.S.C. § 7101.

. As part of its findings, Congress declared that the statutory protection of the right of employees to organize and bargain collectively "(A) safeguards the public interest, (B) contributes to the effective conduct of public business, and (C) facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment.'' 5 U.S.C. § 7101(a)(1)(A) — (C).

. AFOSI's authority extends well beyond investigating national-security crimes. For instance, AFOSI is responsible for non-national-security offenses such as assault and child endangerment; bad checks, forgery, and counterfeiting; bribery; computer crimes; drug offenses; firearm violations such as unlawful possession, discharge, or concealment; burglary; impersonation; improper use of government properly; postal violations; robbery; sex offenses, and traffic offenses. R. at 333-38.

. The Executive Order excluded just one agency under this subsection, the Drug Enforcement Agency, Department of Justice.